87 U.S. 323 (____)
20 Wall. 323
STOCKDALE
v.
THE INSURANCE COMPANIES.
Supreme Court of United States.

*328 Mr. G.H. Williams, Attorney-General, and Mr. S.F. Phillips, Solicitor-General. contra.
Mr. Justice MILLER delivered the opinion of the court.
This was a suit brought in the court below against the plaintiff in error in his official character to recover taxes collected by him, which are alleged to have been illegally assessed against the insurance company. The appeal of the company to the Commissioner of Internal Revenue having been decided against it, the tax was paid and suit brought within six months, as provided by the act of Congress. The insurance company recovered a judgment in the Circuit Court, and the collector brings a writ of error in the interest *329 of the government, the object of which is to test the legality of the tax thus levied and collected.
An agreed statement of facts shows that the taxes complained of were assessed upon dividends declared by the insurance company "on the earnings which had accrued to said company between the 5th day of July, 1869, and the 30th day of June, 1870;" and the dividend was declared after the latter date.
This short statement raises two questions: 1. Was the tax valid as to so much of the dividend as arose from the earnings of the year 1869? 2. Was it valid as to that which arose from the earnings of the year 1870?
As regards the first proposition, it was much considered in the Barnes cases.[*] It was argued in those cases with much ability, and four members of the court were of that opinion that the entire income tax expired with the year 1869, and that as the tax in those cases, as in these, was assessed on dividends declared in the year 1870, they were without authority of law.
The argument in those cases, so far as the opinion of the court was concerned, turned mainly on the question whether the law intended to impose the tax on the income of the corporation, in which case it was obviously the income of 1869 which was taxed, and, therefore, properly taxed; or on the income of the stockholder, ascertained by his dividend, in which case the minority of the court thought that dividends declared in 1870 were not liable to the tax, because the taxing power under the law expired with the preceding year. It is, perhaps, fairly inferable from the report of those cases, and the opinion in the subsequent case of The United States v. Baltimore and Ohio Railroad Company,[] that among those who composed the majority in the Barnes cases, there were some shades of difference in the precise grounds on which the validity of the taxes rested.
Without reopening that subject for an inquiry into those differences, it may be said that the question whether the tax *330 was, in those cases, a tax on the shareholder or on the corporation, was, and is, one of form rather than substance.
The tax is imposed by the statute alike on all dividends declared, and on all undistributed earnings of the corporation, and it is made the duty of the corporation to pay it.
It is also made the duty of the corporation to make returns of these dividends and undivided earnings to the proper internal revenue officer, under a heavy penalty.
In the case of dividends declared, the corporation is authorized to deduct the amount of the tax from the dividend due to the shareholder, before paying it to him.
And it follows from this, that when a dividend is declared to any shareholder, whose dividend is for any special reason exempt from such tax, as in the case of the city of Baltimore on her stock in the railroad company, then the corporation declaring the dividend is not liable.
The effect of such a tax on the shareholder is the same, whether it be considered a tax on his share for the dividend earned by his share, or on the corporation on account of said earnings. And it is the same, whether the tax is imposed on the undivided earnings, or on those earnings after they have been divided. He in any and all these cases, in point of fact, ultimately suffers to that extent, or loses the amount of the tax. We are of opinion that the statute intended to tax those earnings for the year 1869, whether divided or undivided, and that the tax now in question is to that extent valid.
The question arising out of the tax in these cases, so far as the dividends are based on the earnings of the corporation for the year 1870, presents other considerations.
In the view taken by this court in the Barnes cases, it did not become necessary to pass upon the validity and effect of the seventeenth section of the act of 1870.[*] That is entitled an act to reduce internal taxes, and for other purposes. It repealed several sections of the internal revenue law absolutely. It fixed a period in the future for the cessation of *331 others, and it reduced the income tax in a certain class of cases from five to two and a half per cent., and provided for its continuance through the years 1870 and 1871; at the end of which all income tax was to cease.
The section we are considering declared that sections 120, 121, 122, and 123 of the internal revenue law of 1864, as modified by subsequent statutes, "shall be construed to impose the taxes therein mentioned to the first day of August, 1870, and after that date no further taxes shall be levied or assessed under said sections; and all acts or parts of acts relating to the taxes herein repealed, and all the provisions of said acts shall continue in full force for levying and collecting all taxes properly assessed, or liable to be assessed, or accruing under the provisions of former acts," &c., &c.
But for the unfortunate and unnecessary use of the word "construe" in this sentence, we apprehend that none of the resistance to the class of taxes now under consideration would have been thought of.
The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed. The joint resolution of July 4th, 1864, imposed a tax of five per cent. upon all income of the previous year, although one tax on it had already been paid, and no one doubted the validity of the tax or attempted to resist it.
Both in principle and authority it may be taken to be established, that a legislative body may by statute declare the construction of previous statutes so as to bind the courts in reference to all transactions occurring after the passage of the law, and may in many cases thus furnish the rule to govern the courts in transactions which are past, provided no constitutional right of the party concerned is violated.[*]
*332 In the case of the Wheeling Bridge,[*] this court, in a suit brought under its original jurisdiction by the State of Pennsylvania, had declared the bridge a nuisance and decreed its modification or abatement. Congress then passed a law declaring it a post route and a lawful structure as it stood, and this court recognizing the right of Congress to regulate such a bridge under the commerce clause of the Constitution, dismissed the case from its further consideration.
This doctrine is reaffirmed in the case of the Clinton Bridge.[]
It is undoubtedly true that, in our system of government, the law-making power is vested in Congress, and the power to construe laws in the course of their administration between citizens, in the courts. And it may be conceded that Congress cannot, under cover of giving a construction to an existing or an expired statute, invade private rights, with which it could not interfere by a new or affirmative statute.
But where it can exercise a power by passing a new statute, which may be retroactive in its effect, the form of words which it uses to put this power in operation cannot be material, if the purpose is clear, and that purpose is within the power. Congress could have passed a law to reimpose this tax retrospectively, to revive the sections under consideration if they had expired, to re-enact the law by a simple reference to the sections. Has it done anything more? Has it intended to do anything more? Are we captiously to construe the use of the word "construe" as an invasion of the judicial function where the effect of the statute and the purpose of the statute are clearly within the legislative function?
A critical view of the whole of the statute of 1870 shows that it was designed to recast the internal revenue laws, to repeal some taxes, modify others, and declare the re-enactment or continuance of others for a limited time. And this was especially true of the class of taxes embraced under the general head of income taxes of all kinds. The paragraph *333 we have been considering was not in its essence an attempt to construe a statute differently from what the courts had construed it, for no construction on this subject had been given by any court. Nor was it an attempt by construing a statute to interfere with or invade personal rights which were beyond the constitutional power of Congress. But it was legitimate exercise of the taxing power by which a tax, which might be supposed to have expired, was revived and continued in existence for two years longer.
It was, therefore, valid for that purpose, and the tax must be upheld. It follows that on the agreed statement of facts judgment should have been rendered for the defendant in the Circuit Court, and the judgment of that court is reversed and the case remanded, with directions to enter such a judgment.
This opinion disposes of all the cases, thirteen in number, in which Stockdale is plaintiff in error, submitted with this, and the same judgment is rendered in each of these cases.
Mr. Justice BRADLEY (with whom concurred the CHIEF JUSTICE).
Whilst I concur in the opinion of the court, it seems to me that the decision may be placed on a still more satisfactory ground.
The taxes in question were levied in 1870 under the 120th and 122d sections of the Internal Revenue Act of 1864, as amended. They were, in some cases, for earnings made in 1869, but divided in 1870, and in others for earnings made partly in 1869 and partly in 1870 (prior to the first of July, in the latter year), and divided in 1870, prior to July, except in one case, in which the dividend was declared on the 5th of July.
If the 119th section of the Internal Revenue Act, which directed that the income tax should cease to be collected in 1870, did not apply to the taxes imposed by the 120th and 122d sections, there is no doubt of the validity of the taxes in question, for there was no other limitation of time affixed to those sections except that made by the act of July 14th, *334 1870, which declared that sections 120 and 122 should be in force until the 1st of August, 1870, and no longer. I am clearly of opinion now, as I always have been, that the 119th section did not apply to the taxes imposed by sections 120 and 122. The group of sections from 116 to 119, inclusive, stood by themselves in the Internal Revenue Act of 1862 under the head of "income tax," forming sections 89 to 93 of that act. They related to the annual income tax payable by individuals directly. They did not include the taxes payable by banks, insurance, railroad, and canal companies in respect of their dividends and earnings, and in respect of the interest on the bonds of the latter companies. The latter taxes were payable at a different time and in a different manner. The personal income tax was carefully defined, and the respective duties of the individual and the assessor in reference to it were first fully set forth, and then came the 119th section, which, in conclusion, directed when the tax for each calendar year, thus imposed, should be levied, and when it should be paid, namely (as directed in the last revision), it was to be levied in March and paid before the 30th of April in each year, "until and including the year 1870, and no longer." This last expression is the one on which this whole question has been raised. By the connection of the sentence, the meaning of the terms, and the rules of logic as well as grammar, this phrase can only apply to the annual personal tax of which alone section 119 is treating.
The taxes imposed by sections 120 and 122 on the banks, insurance, railroad, and canal companies (which were never included in the annual income tax, but expressly excluded, or excepted therefrom) may be, as, in the Baltimore and Ohio Railroad case, we decided they were substantially, taxes on the stockholders and bondholders, though nominally, and in form, imposed on the companies. Still, they are not referred to in the 119th section. The only taxes referred to in that section were those annual taxes, payable directly by the individuals themselves, in April (or some other month) of each year. The corporation taxes were not thus payable, and were not included in the limitation.
*335 The phrase in question is first found in the Internal Revenue Act of July 1st, 1862, 12 Stat. 474, sec. 92. That act is divided into various parts, ranged under distinct and separate headings, which are inserted in large capitals in the body of the act. Thus we have sections 68 to 75 under the head of "manufactures, articles, and products;" section 76, under "auction sales;" section 77, under "carriages, &c.;" sections 78 and 79, under "slaughtered cattle, hogs, and sheep;" section 80, under "railroads, steamboats, and ferry-boats," imposing a tax of three per cent. on gross earnings; section 81, under "railroad bonds," being the section corresponding to section 122 in the act of 1864; sections 82 to 85, under "banks, trust companies, savings institutions, and insurance companies," corresponding to sections 120, 121 in the act of 1864; sections 86, 87, under "salaries and pay of officers, &c.;" section 88, under "advertisements;" sections 89 to 93, under "income duty," corresponding to sections 116 to 119 of the act of 1864, and so on. Under the last head, section 92 commences as follows: "That the duties on incomes herein imposed shall be due and payable on or before the 30th day of June, in the year 1863, and in each year thereafter, until and including the year 1866, and no longer; and to any sum or sums annually due and unpaid for thirty days after the 30th of June, as aforesaid, and for ten days after demand thereof, &c., there shall be levied, in addition thereto, the sum of five per centum, &c., as a penalty, &c." Here we have the exact language of section 119 in the act of 1864 and its subsequently amendments. An inspection of the act of 1862 shows demonstrably that the language of this section refers only to the income tax imposed by section 89, which exactly corresponds to section 166 of the act of 1864. I believe no one who has carefully examined the act of 1862 ever had a doubt on the subject.
Now, all these various provisions for different classes of taxes are contained in the act of 1864 and the several acts amendatory thereof, but somewhat differently collocated. Thus the sections on income duty in the latter act are sections 116 to 119, and come before the sections on railroad *336 bonds, banks, &c., which are sections 120 to 122. But the general frame of the sections, and the language used in each respectively, are the same. Can it be possible that the phrase, "until and including the year 1870, and no longer," in section 119 of the latter act, standing, as it does, in substantially the same sentence and relative section as the corresponding words did in the act of 1862, embraced within their scope whole classes of taxes which it did not embrace in the act of 1862? taxes totally repugnant as to time and manner of payment to those described, and specially referred to in the section and sentence where the words occur. Such cannot, it seems to me, be the true construction of the act.
It is not necessary for us to explain why it was that a period was fixed to the income tax proper, and not to the taxes payable by the companies on dividends and interest. The former was an exceedingly odious tax, involving an inquiry into all the sources of every individual's income, and it may well have been the design of Congress to indicate from the start that it was to be only temporary in its operation. But no one, I think, can carefully compare the two acts, of 1862 and 1864, without coming to the conclusion that the limit of the income tax was affixed only to that tax designated as "income tax" in the act of 1862.
JUDGMENT REVERSED.
Mr. Justice STRONG, with whom concurred Justices DAVIS and FIELD, dissenting.
I dissent from the judgments given in these cases, and from the reasons assigned in support of the judgments.
If it ever was claimed, it is no longer contended by any one that the tax on dividends and Federal salaries, for the collection and payment of which provision was made by the 120th, 122d, and 123d sections of the Internal Revenue Act of 1864, and its amendments, was not a tax upon income, and a part of the income tax levied by the 116th section of the act. And, notwithstanding what was decided in Barnes *337 v. The Railroads,[*] I regard it as having been settled by the subsequent case of The United States v. The Baltimore and Ohio Railroad Company,[] that the tax on dividends declared and interest payable by the companies mentioned in the 122d section was a tax upon the stockholders and bondholders of the companies, and not a tax upon the corporations. Of this opinion were all the judges of this court except two. Though the corporations were by the law made agents of the government for collecting it and paying it over, the tax itself was ruled to be a part of the income tax of the persons entitled to the interest or dividends. For the same reasons which compelled such a decision, the tax upon dividends declared by banking, trust, and insurance companies, and the tax upon Federal salaries, for the collection and payment of which provision was made in the 120th and the 123d sections of the act, were income taxes of the shareholders of those companies, and of the officers from whose salaries they were directed to be deducted.
And if this be so, then the tax in controversy in these cases was a tax upon the income of 1870, and not upon the income of 1869. None of the dividends were declared until after January 1st, 1870, and some of them not until many months after that date. True the funds out of which the dividends were made were composed of earnings of the company, in some cases wholly and in others partly, in 1869; but these earnings were not available to the shareholders until the dividends were made out of them. Until then they were in no sense the income of the shareholders and taxable as such. In the express words of the act, it was income derived by the taxpayer which alone was made subject to the tax. The language of the law was that the duty on the dividends should be paid "whenever the same" (that is the dividends) "shall be payable." And such was the construction which was from the beginning given to the act. Prior to the enactment of 1864 there was an income tax on dividends at the rate of three per cent., and when by that act *338 the rate was raised to five per cent., the Commissioner of Internal Revenue issued a circular, dated July 1st, 1864, declaring that "all dividends payable on and after July 1st, 1864, no matter when declared, are subject to the duty of five per centum." Much more, if dividends are not income before they are payable, are they not income before they are declared? I repeat, then, the taxes in controversy now were taxes upon the income of the shareholders for the year 1870. They were, therefore, not authorized by the statute.
The 119th section of the act, I think, put an end to all taxes on income derived from any source after December 31st, 1869. Its language was, "the duties on incomes herein imposed shall be levied on the first day of May, and be due and payable on or before the 30th day of June in each year, until and including the year 1870, and no longer." Construing this, as it must be construed, in connection with the 116th section, the matter is plain. That section declared that the income duty provided for in the act should "be assessed, collected, and paid upon the gains, profits, or income for the year ending the 31st day of December next preceding the time for levying, collecting, and paying said duty." The tax authorized to be levied in May, 1870, and the last authorized by the act of 1864, or any of its amendments, was a tax upon the income derived by the taxpayer in 1869.
Returning, then, to the 119th section, it plainly limited the duration of the tax upon income of every kind  all income upon which the act imposed a tax. It excepted none. It did not speak of taxes on income, a return of which was required to be made by the taxpayer, but its language was, "the duties herein imposed." The 119th section imposed no tax. Its reference, therefore, must have been to taxes imposed by other sections of the act; to those imposed by the 116th section, which were taxes on income from any source, whether dividends of railroad companies, or banks, or insurance companies, or any other corporations not particularly specified. It is true the 119th section makes no particular mention of taxes on that portion of income mentioned in the *339 120th, 122d, and 123d sections; but such mention would have been superfluous. They were included in the large classification, "the duties herein imposed." The taxes upon such dividends had been paid before the expiration of the previous year; and the act guarded against double taxation by authorizing a deduction from the required estimate, by the assessor, of the income on which the tax had been paid.
Indeed, I think it impossible to escape from the conclusion that the 119th section was intended to enact that no tax should be levied or collected upon any income which was not received by the taxpayer or derived by him, or which did not accrue to him on or before the last day of December, 1869. Any other construction would make the law offensively discriminating and grossly unequal. I cannot believe Congress intended that one who had lent his money to a telegraph company, to a bridge company, or to a mining or manufacturing company, or one who might receive dividends made by such companies, should be exempt from a tax upon his interest and dividends received after December 31st, 1869, while one who had lent to a canal, railroad, banking, insurance, savings fund, or trust company, or who derived dividends from them, should continue indefinitely to pay an income tax on his interest and dividends. I cannot believe it was intended to tax the salaries of officers of the United States after the expiration of the tax upon all other salaries. I will not attribute such injustice to Congress. I discover no intent to make such odious discriminations, and, in my opinion, such an intent ought clearly to appear before a court would be justified in giving the construction to the act which works such a result.
I need say no more upon this part of the case. If the tax upon dividends, made by banking, trust, and insurance companies, the tax upon railroad dividends, and upon salaries of Federal officers was a tax upon income; if the tax mentioned in the 120th and 122d sections was a tax upon the shareholder, or loanholder, and not upon the corporations; if dividends declared in 1870 are not income of the shareholders in 1869; and if the 119th section put an end to all *340 income tax upon income not received by shareholders in companies on or before December 31st, 1869, each of which I have endeavored to show, the right disposition of the cases before us is clear. The several companies who are defendants in error were not authorized to retain any tax out of the dividends made to their shareholders in 1870. No such tax had any legal existence, and the companies were under no obligation to pay it. The judgments they have recovered for the sums illegally exacted from them ought, therefore, to be affirmed.
I do not overlook the later act of Congress, passed July 14th, 1870, to which a majority of my brethren attach some importance as bearing upon these cases. The 17th section of that act enacted "that sections 120, 121, 122, and 123 of the act of June 30th, 1864, entitled `An act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes.' as amended by the act of July 13th, 1866, and the act of March 2d, 1867, shall be construed to impose the taxes therein mentioned to the first day of August, 1870, but after that date no further taxes shall be levied and assessed under that section." This was, doubtless, intended as a legislative construction of the sections of the act designated. I shall not turn aside to inquire at length how far the law-making power can determine authoritatively the meaning of an existing statute. The construction, or interpretation, of a statute would seem to be, ordinarily, a judicial rather than a legislative function. I know that acts declaratory of the meaning of former acts are not uncommon. They are always to be regarded with respect, as expressive of legislative opinion, and, so far as they can operate upon subsequent transactions, they are of binding force. But it is well settled they cannot operate to disturb rights vested or acquired before their enactment, or to impose penalties for acts done before their passage, acts lawful when they were done. It is always presumed the legislature had no intention to give them such an effect.
Now, if the income tax imposed by the act of 1864 and its supplements expired with the 31st of December, 1869; if *341 the act did not prescribe a tax upon dividends made after that date, as I have endeavored to maintain, it was not the duty of these defendants in error to pay to the collector five per cent. of the dividends made by them in 1870, and they had no authority to detain any portion of such dividends from their stockholders. On the contrary, it was their duty to pay over the entire dividends to the shareholders, who acquired a vested right in them as soon as they were made, and calling upon them to pay a tax on those dividends was an attempt to enforce a duty that had no existence. It was substantially an effort to enforce a penalty for an omission to do that which they had no right to do, a penalty equal to the amount of a five per cent. tax on the dividends, with an additional five per cent. thereon. The companies, at most, were merely agents of the government to collect a tax from the shareholders and pay it over. Their liability, if any, arose out of an unlawful failure to discharge these duties. But there was no such duty when the dividends were made. Surely the declaratory act of 1870 cannot be regarded as operating retrospectively to make the act, or omission, of these companies unlawful, and punishable as an offence, when the act, or omission, was innocent at the time when it occurred. Were it conceded that the construction given by Congress is binding in all cases where it would not disturb vested rights, or operate practically as an ex post facto law, it can have no application to such a case as the present.
Of course, I am not to be understood as maintaining that when the declaratory act was passed Congress had no power to impose a tax upon any income that had been received before that time. What I mean to assert is that it cannot be admitted Congress intended by the act of 1870 to subject any institution to a penalty for not having, before its passage, collected and paid a tax which had not been imposed. The act, therefore, in my judgment, has no application to the present cases, and I think the judgment should be affirmed.
NOTES
[*] 17 Wallace, 294.
[] 17 Ib. 322.
[*] 16 Stat. at Large, 261.
[*] Sedgwick on Statutory Law, 253; Municipality No. 1 v. Wheeler, 10 Louisiana Annual, 747.
[*] 18 Howard, 421.
[] 10 Wallace, 454.
[*] 17 Wallace, 294.
[] Ib. 322.